GRIFFITH *v.* HICKS.

Opinion delivered October 17, 1921.

1. ACCOUNT STATED—AGREEMENT OF PARTIES.—An account stated, under Missouri law, is an account settled between the debtor and creditor in which a sum of money or balance is agreed on and an acknowledgment by one in favor of the other of a balance or sum certain to be due and an express or implied promise to pay the sum by one to the other.

2. ACCOUNT STATED—AGREEMENT OF PARTIES.—To constitute an account stated, under Missouri law, the debtor and creditor must both agree to the correctness of the account, and, in addition

thereto, the debtor must agree to pay or satisfy the amount agreed upon, and the creditor must agree to accept the payment of the agreed sum in satisfaction of the account.

3. ACCOUNT STATED—PROOF.—An account stated, under the Missouri law, may be proved by evidence either direct or circumstantial, as any other fact may be proved, or if the party to whom the account is rendered retains it without objection for an unreasonable length of time, his so retaining it will justify the inference that he has approved it, and in such case other proof of his acceptance and agreement to pay is not required.

4. ACCOUNT STATED—CONCLUSIVENESS.—Where parties have had mutual dealings, and one renders to the other a statement purporting to set forth all the items of indebtedness on the one side and credit on the other, the account so rendered, if not objected to in a reasonable time, becomes an account stated, and cannot be impeached afterward, except for fraud or mistake.

5. ACCOUNT STATED—UNREASONABLE DELAY IN MAKING OBJECTION.— Where a party to whom a mutual account is rendered delays for more than 20 months before making objection to the other party, he cannot excuse his delay by showing that he thought he had made objection to a duly authorized agent of the other party, where such supposed agent had no authority to represent the other party.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*John E. Miller* and *C. E. Yingling,* for appellant.

An account stated is not of itself conclusive but is open to rebuttal by competent testimony. Jones, Commentaries on Evidence, Vol. 2, § 287.

Whether the balance contained in an account rendered was admitted by the debtor so as to make the account an account stated in a question of fact for the consideration of the jury. Vol. 1 R. C. L. p. 211, § 9.

The presumption of acquiescence in an account rendered arising from the fact that no objection thereto is made within a reasonable time is not conclusive, but only evidence of an admission, and is, therefore, subject to disproof. Vol. 1 R. C. L. p. 214, § 12; see also page 215, § 13 for rule on question of weight to be given subject under such circumstances, as well as 105 Iowa 488; 67 A. S. R. 306 and 80 Ark, 438. The trial court erred in

giving a peremptory instruction to find that the account had become an account stated, as the matter should have been left to the jury. See 80 Ark. 469; 120 Ark. 316; Vol. 1 C. J. p. 680, § 251, also p. 691 § 276, and p. 692 § 277.

During the time that appellee claims his various fees were accruing, without making any demand therefor, he borrowed money of the appellant, giving his note therefor. This in itself gives rise to the presumption that appellant was not at the time indebted to the appellee. 119 Minn. 441, Ann. Cas. 1914B p. 381.

*J. N. Rachels,* for appellee.

An itemized account, rendered by one and assented to by the other of the parties thereto, becomes an account stated, and as a new cause of action. 47 Ark. 541, 126 S. W. 757; 58 Mo. 83; 79 Mo. 77; 131 Fed. 688; 107 Fed. 881; 108 Fed. 726; 180 S. W. 19; 226 S. W. 610.

Assent may be given either expressly (verbally or in writing) or impliedly (by compliance or silent acquiescence). 47 Ark. 541; 65 Mo. 661; 129 S. W. 994; 166 S. W. 1126; 184 S. W. 951; 216 S. W. 1009; 21 Wall. 105; 17 Otto 325; 65 Pac. 84; 229 S. W. 833; 185 S. W. 786; 175 S. W. 1140.

When an account rendered has been assented to, the question of liability is one of law for the court, not one of fact for the jury. 47 Ark. 541; 80 Ark. 469; 19 Mo. App. 534, etc.

Whether an account rendered and not objected to within a reasonable time, and not assailed for fraud or mistake has become an account stated is a question of law, not one of fact. 80 Ark. 469 and other authorities cited above.

An account stated is final and unimpeachable, except for fraud, accident or mistake. 114 Ark. 312; 13 Ark. 609; 21 Ark. 421; 19 Ark. 648; 55 Ark. 155.

The doctrine of account stated applies to the relationship of attorney and client. 80 Ark. 469; 65 Pac. 84.

SMITH, J. This is a suit filed by appellee Hicks against appellant Griffith upon a statement of an account which is alleged to have become an account stated.

Hicks was a resident of this State until 1916, when he removed to St. Louis, where he has since resided. Griffith is also a resident of that city. Hicks was for many years the attorney in this State for Griffith, whose interests here were varied and valuable. The professional relation was mutually satisfactory, and the personal relation was close and cordial, as shown by the correspondence between the parties offered in evidence.

Griffith is shown to be a man of large affairs, and from time to time loaned Hicks considerable sums of money. One such loan was evidenced by a note dated February 23, 1913, for the sum of $1,781.25, due one year after date. This note was executed jointly by Hicks and one E. A. Robbins, of Searcy, Arkansas.

Finally an estrangement grew up between Hicks and Griffith, and on November 19, 1917, Hicks rendered Griffith what Hicks testified was a complete statement of the account between them, in which he embraced all the items of professional service for which charges had been made, and credited the account with payments received and also with the note signed by himself and Robbins. Griffith received the account the day after it was mailed. No objection of any kind to the account was made by him except as hereinafter stated.

Griffith saw Robbins in Searcy and demanded payment of the note, and Robbins communicated that fact to Hicks in July, 1919. When advised of this demand on Robbins, Hicks told Robbins that he would attend to the note, as that was an affair between himself and Griffith, This assurance satisfied Robins, and he gave the matter no further attention. Robbins died in August, 1919, and some months thereafter Griffith filed the note with the administrator of Robbins' estate for allowance and

classification. This proceeding was had in the probate court of White County, the county in which Robbins lived and in which the administration on his estate was pending.

On January 5, 1920, which was immediately after Hicks had been advised that the note had been filed as a claim against Robbins' estate, Hicks brought this suit. On January 20, 1920, Griffith filed an answer, denying liability for the items comprising Hicks' account. At the same time he filed a counterclaim and prayed judgment against Hicks.

In the direct examination of Griffith in the trial from which this appeal comes he was asked if he had talked with any one about the statement he had received from Hicks. He answered that shortly after he got the statement he had a talk with Mr. Cornwell, who was Hicks' law partner. This conversation occurred in Griffith's office, where Cornwell had come as the representative of Hicks to discuss a matter of business between Hicks and Griffith, but which had no relation to the items covered in the account which Hicks had mailed to Griffith. Griffith was asked: "What, if anything, did Cornwell represent to you about the contract; I mean about the statement, and about the amount due or claimed to be due Mr. Hicks?" An objection to this question was sustained. Griffith was further asked: "Did Cornwell come there to see you as the representative of Hicks?" And, also: "Did Cornwell state to you that he wanted to talk to you about the account which Hicks had rendered to you?" Objections were sustained to both these questions. Thereupon Griffith offered to show that "Mr. Cornwell, the law partner of Mr. Hicks, came to see Mr. Griffith about the account, and asked to talk to him about it, and at that time he denied owing Mr. Hicks anything on the items charged to him."

This offer of proof was by the court refused, and Griffith excepted.

Griffith gave testimony sufficient to raise an issue for the jury as to the correctness of Hicks' account, if the account was not in fact an account stated.

Hicks denied that Cornwell had any authority to represent or act for him in adjusting or settling his account against Griffith.

The court directed the jury to return a verdict in favor of Hicks, and this appeal is prosecuted to review that action.

The statement of the account was mailed and received in Missouri, and we must, therefore, look to the law of that State to determine whether the account became stated. The case of *Bloss* v. *Aurora Milling Co.*, 229 S.W. 833, is said to be the latest expression of an appellate court of that State on the question of an account stated. This decision is by the Springfield Court of Appeals, and, in defining an account stated, the court quotes from the case of *Powell* v. *Pacific R. R.*, 65 Mo. 658, the following language of the Supreme Court of that State: "An account settled between the debtor and creditor therein in which a sum of money or balance is agreed on and an acknowledgment by one in favor of the other of a balance or sum certain to be due and an express or implied promise to pay the sum by one to the other." Continuing, Cox, P. J., speaking for the court, said:

"To constitute an account stated, the debtor and creditor must both agree to the correctness of the account, and in addition thereto the debtor must agree to pay or satisfy the amount agreed upon and the creditor must agree to accept the payment of the agreed sum in satisfaction of the account.

"The agreement may be proven by evidence either direct or circumstantial as any other fact may be proven, or, if the party to whom the account is rendered retains it without objection for an unreasonable length of time, his so retaining it will justify the inference that he has approved it, and in such a case other proof of his

acceptance and agreement to pay is not required. *Kenneth Inv. Co.* v. *Bank,* 96 Mo. App. 125, 135; 70 S. W. 173; *Mo. Pacific Ry. Co.* v. *Coombs & Bro. Com. Co.,* 71 Mo. App. 299.''

Under this test, the majority are of the opinion that the account rendered became an account stated for the following reasons.

Where parties have had mutual dealings, and one renders to the other a statement, purporting to set forth all the items of indebtedness on the one side and credit on the other, the account so rendered, if not objected to in a reasonable time, becomes an account stated, and cannot afterwards be impeached, except for fraud or mistake *Lawrence* v. *Ellsworth,* 41 Ark. 502, and *Dunavant* v. *Fields,* 68 Ark. 534.

The law requires an objection within a reasonable time. The retention of the account apparently beyond a reasonable time is open to explanation, and Griffith might have explained his waiting for a time by showing that he thought the law partner of Hicks was the latter's agent in the premises. The objection, however, must be something more than a mental operation on the part of the person receiving the account. The objection must be made to the party rendering the account, or his duly authorized agent. Hence Griffith could not excuse his delay of two years in failing to object to the account by showing that he thought he had made objection to a duly authorized agent of Hicks.

In determining what was a reasonable time within which to object, the court might permit Griffith to explain the delay by showing that he made objection to Hicks' law partner thinking he was Hicks' agent. He could not excuse himself indefinitely on this account. It was his duty to scertain the authority of Hicks' law partner in the premises within a reasonable time, and he could not retain the account for twenty months without objection and excuse his delay by showing that he thought he had objected to a duly authorized agent of Hicks. This would be to allow his mental attitude in

the premises to govern and would excuse the communication of his objection to the other party for an indefinite length of time. This is not the law. The objection must be made to the party rendering the account, or his duly authorized agent, within a reasonable time.

It is the opinion of the Chief Justice and the writer that the excluded testimony of Griffith should have been admitted; that the actual agency and authority of Cornwell is not of controlling importance. An account rendered becomes an account stated only by the admission of its correctness by the debtor. This admission may be made expressly or it may arise by implication from the circumstances of the case. But an account cannot become an account stated unless the debtor, expressly or by implication, admits its correctness. The proper inquiry, therefore, is, what did Griffith do? Was his conduct such as that it must be said that he has impliedly assented to the correctness of the account? The assent of the debtor is ordinarily implied from the length of time during which the account is retained by the debtor without objection made. The courts, therefore, hold that the debtor may show any fact or circumstance which repels the implication that he has assented to the correctness of the account.

So here we think the question of Griffith's assent was for the jury. In determining whether Griffith has, by implication, assented, we view the circumstances from his perspective, for it is his acquiescence or non-acquiescence that we seek to determine. Did he believe, and was it reasonable for him to believe, that, in his conversation with Cornwell, the law partner of Hicks, he had denied liability, it being borne in mind that Griffith supposed that Cornwell had been sent to him by Hicks to discuss the account, and that no further communication between Hicks and Griffith occurred after the receipt of the account through the mails and Griffith's repudiation of liability for any of the items covered by it in his conversation with Cornwell? Or, to state the proposition conversely, must we say, as a mat

ter of law, that, because of the lapse of time herein shown, Griffith must be held to have assented to the correctness of the account, notwithstanding his denial of liability to Cornwell and the absence of any further communication on the subject from Hicks? We think the question of Griffith's assent is one of fact which should have been submitted to the jury.

As has been said, Griffith gave testimony questioning the accuracy both of the charges and credits on Hicks' account; but if the account is, in fact, an account stated, these last questions pass out of the case.

As before stated, the majority are of the opinion that the account rendered became an account stated. The judgment is therefore affirmed.